COMMONWEALTH of Pennsylvania,
Appellee

v.

Hector TRINIDAD, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 12, 2013.

Filed April 21, 2014.

Raymond C. Geary, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: GANTMAN, OLSON and WECHT, JJ.

OPINION BY OLSON, J.:

Appellant, Hector Trinidad, appeals from the judgment of sentence entered on September 5, 2012, as made final by the January 17, 2013 order denying his post-sentence motion. We affirm.

The trial court aptly summarized the historical facts in this case as follows:

Appellant was under investigation for the shooting death of Keith Bolden, which occurred on September 2, 2008 in the 800 block of East Thayer Street in the Kensington section of Philadelphia. On October 2, 2008, Appellant and Robert Rosado ("Rosado") both gave statements to homicide detectives inside the

Homicide Division. After [their release from questioning], Appellant approached Rosado and asked if he implicated him to the police and Rosado told Appellant [that he did not implicate him in Keith Bolden's murder]. Appellant believed that Rosado had "snitched" on him in the murder investigation of Keith Bolden. On December 27, 2008, Appellant and a friend confronted Rosado as Rosado approached his mother's house at 822 East Thayer Street. Appellant's friend fired two (2) shots in Rosado's direction [ ] as Rosado ran down the steps of his mother's home. Appellant fired nine (9) shots at Rosado, striking him in his back. [A friend rushed Rosado to the hospital] with assistance from Philadelphia Police Officer Sergeant Jonah Conway. [A] bullet hit Rosado's abdomen, [striking] his kidney and fracturing a rib. The bullet and bullet fragments were left inside Rosado because the risk of removal was too great. As a result of his injuries, Rosado was hospitalized for eight (8) days and his health has declined.

Trial Court Opinion, 7/11/13, at 2–3.

Following trial on June 25–28, 2012, a jury found Appellant guilty of criminal attempt (murder), aggravated assault, and criminal conspiracy.[1] Thereafter, on September 5, 2012, the trial court imposed sentence upon Appellant. The court ordered Appellant to serve 17½ to 40 years in prison for his criminal attempt conviction and ten to 20 years' incarceration for his conspiracy conviction. The court further directed Appellant to serve these sentences consecutively and that Appellant's aggregate sentence of 27½ to 60 years should run consecutive to a sentence of six

and one-half to 13 years' imprisonment Appellant was currently serving for a prior firearms conviction. The court merged Appellant's conviction for aggravated assault with his attempted murder conviction.

On September 27, 2012, Appellant filed a post-sentence motion pursuant to Pa. R.Crim.P. 720(C) alleging that he had recently acquired newly-discovered evidence. The trial court convened a hearing on November 20, 2012, at which two defense witnesses offered testimony. Subsequently, Appellant and the Commonwealth presented argument to the court on January 14, 2013. By order entered January 17, 2013, the trial court denied Appellant's post-sentence motion. Appellant filed a notice of appeal on February 5, 2013.

In his brief, Appellant raises the following questions for our review:

Did the [trial c]ourt err when it overruled Appellant's hearsay objections?

Did the [trial c]ourt err when it denied Appellant's [after-discovered evidence motion filed pursuant to Pa.R.Crim.P. 720(C) ]?

Was there sufficient evidence to support the [guilty verdicts for] criminal attempt, aggravated assault and conspiracy?

Did the trial court abuse its discretion by sentencing Appellant to a sentence that would run consecutive to a sentence already being served in another case?

Appellant's Brief at 4 (we have re-ordered Appellant's claims for ease of discussion).[2]

█ Before we examine the substance of Appellant's contentions, we consider

---

1. 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), and 903(a)(1), respectively.

2. Appellant preserved his claims by including them within a concise statement of errors

complained of on appeal filed pursuant to Pa.R.A.P. 1925(b) and an order entered by the trial court.

whether Appellant timely filed the present appeal. "It is well settled that the timeliness of an appeal implicates our jurisdiction and may be considered *sua sponte.*" *Commonwealth v. Crawford,* 17 A.3d 1279, 1281 (Pa.Super.2011). "Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal." *Id., quoting Commonwealth v. Nahavandian,* 954 A.2d 625, 629 (Pa.Super.2008).

■ Our discussion is necessary due to our initial review of the record in this matter which indicates that Appellant's post-sentence motion alleging after-discovered evidence was filed 22 days after the imposition of sentence, which raises questions as to the timeliness of his motion and his notice of appeal. After careful review of Pa.R.Crim.P. 720, together with a close inspection of the record, we conclude that Appellant's motion was timely filed and that the instant appeal is properly before us for review.

Pursuant to Pa.R.Crim.P. 720(A)(2), only a timely-filed post-sentence motion triggers an extension of the time for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2); *Commonwealth v. Dreves,* 839 A.2d 1122, 1127 (Pa.Super.2003) (*en banc*) (the filing of untimely post-sentence motions does not toll the 30–day period to file an appeal from the judgment of sentence). Ordinarily, a timely post-sentence motion must be filed within ten days of the imposition of sentence. *See* Pa.R.Crim.P. 720(A)(1). Rule 720(A)(1) lists two exceptions, however. Relevant to the instant appeal, the first exception applies where the defendant files, pursuant to Rule 720(C), a post-sentence motion seeking a new trial on grounds of after-discovered evidence.[3] Pa. R.Crim.P. 720(A)(1); Pa.R.Crim.P. 720(C). Rule 720(C) states that such a post-sentence motion "must be filed **in writing promptly after such discovery.**" Pa. R.Crim.P. 720(C) (emphasis added).

■ We have been unsuccessful in locating a published decision that considers the impact of the bolded language (above) found in Rule 720(C) on the timing requirements contained in Rule 720(A) for filing a postsentence motion and taking an appeal. We therefore hold that a defendant files a "timely" post-sentence motion within the contemplation of Rule 720(A)(2), and thus is eligible for an extension of the appeal period, where he files a post-sentence motion pursuant to Rule 720(C) promptly after the acquisition of after-discovered evidence.

We find support for our holding in the text of Rule 720(A)(2). Under Rule 720(A)(2), if the defendant files a timely post-sentence motion, his notice of appeal must be filed within 30 days of the entry of the order disposing of the motion, within 30 days of the entry of an order denying the motion by operation of law, or within 30 days of the entry of an order confirming that the motion has been withdrawn. Pa. R.Crim.P. 720(A)(2). Although Rule 720(A)(2) conditions extensions of the appeal period upon the filing of a timely post-sentence motion, the rule does not restrict such extensions to circumstances in which the post-sentence motion has been deemed timely because it was filed within the ten-day limitations period found in Rule 720(A)(1). Because Rule 720(A)(2) is for-

---

**3.** Rule 720(A)(1) also provides that the ten-day filing period does not apply in summary cases following a trial *de novo* in the court of common pleas. Pa.R.Crim.P. 720(A)(1). This is because Rule 720(D) essentially eliminates post-sentence motion practice in summary case appeals following a trial *de novo* in the court of common pleas. Pa.R.Crim.P. 720(D). In such cases, "[t]he imposition of sentence immediately following a determination of guilt at the conclusion of a trial *de novo* constitutes a final order for the purpose of appeal." *Id.*

mulated in this way, we conclude that a defendant qualifies for an extension of the appeal period under Rule 720(A)(2) whenever he files a post-sentence motion that is timely because it complies with the requirements of Rule 720(C) as set forth above.

Our concern about the preservation of direct appeal rights offers further support for our holding. This concern is best illustrated by way of example. If a defendant acquires after-discovered evidence more than ten days after his sentence is imposed, but before the 30–day appeal period expires (as in the present case), he can take prompt action pursuant to Rule 720(C) and file his post-sentence motion before the trial court. If he elects this course, however, he cannot file an appeal until his motion is decided. *See* Pa. R.Crim.P. 720(A)(2); *see also* Pa.R.Crim.P. 720 cmt. ("No direct appeal may be taken by a defendant while his or her post-sentence motion is pending."). Without the rule we have adopted above, a defendant who finds himself confronted with this circumstance would be unable to file a timely direct appeal if his motion is not decided before the appeal period runs.[4] For this reason, we believe that a timely post-sentence motion alleging after-discovered evidence pursuant to Rule 720(C) tolls the appeal period as provided in Rule 720(A)(2).

We now consider whether Appellant promptly requested relief under Rule 720(C) and, hence, filed a timely post-sentence motion for purposes of Rule 720(A)(2), thereby triggering an extension of the time in which he was permitted to file his notice of appeal.

After the jury found Appellant guilty, the trial court imposed sentence on September 5, 2012. Thereafter, on September 27, 2012 (22 days after the imposition of sentence), counsel for Appellant filed a post-sentence motion pursuant to Rule 720(C). The motion alleged that "[o]n September 21, 2012 counsel for [Appellant] received an [a]ffidavit from Khary Herbert stating that he was a witness to the crime and had exculpatory evidence to offer on behalf of [Appellant]." Post–Sentence Motion, 9/27/12, at 1. Counsel for Appellant attached Herbert's affidavit to the motion.

The trial court convened a hearing on Appellant's post-sentence motion on November 20, 2011. Appellant called Herbert and Danny Ruiz[5] to testify at the hearing. Herbert's testimony centered upon the information set forth in his affidavit. Herbert conceded, however, that he was incarcerated with Appellant at or around the time of trial in this case and that, prior to the conclusion of Appellant's trial, he told Appellant that he was willing to testify as a witness for the defense. N.T., 11/20/12, at 38–39. Ruiz testified about a conversation he had with Rosado in January or February 2012. According to Ruiz, Rosado confided during their conversation that the shooter was a black male and that the district attorney's office was pressuring him to identify Appellant as his assailant. *Id.* at 9–10. It appears from the record that the defense was un-

---

4. A defendant who files a timely notice of appeal and subsequently learns of after-discovered evidence may petition this Court for a remand to pursue his claims before the trial judge. *See Commonwealth v. Perrin,* 59 A.3d 663, 665–667 (Pa.Super.2013), *quoting* Pa. R.Crim.P. 720 cmt. ("[A]fter-discovered evidence discovered during the direct appeal process must be raised promptly during the

direct appeal process, and should include a request for a remand to the trial judge...").

5. Ruiz' testimony was not identified as after-discovered evidence in Appellant's post-sentence motion. The Commonwealth, however, did not object to the admission of his testimony at the hearing on the motion.

aware of Ruiz' alleged conversation with Rosado until Ruiz contacted Appellant's counsel by telephone on September 26, 2012. *Id.* at 6–7.

The parties presented oral argument on Appellant's post-sentence motion on January 13, 2013. At the outset, counsel for Appellant withdrew the motion insofar as it related to Herbert's testimony since Appellant was aware of his availability as a witness prior to trial. Counsel argued, however, that Appellant was entitled to relief based upon Ruiz' testimony, which was unavailable at the time of trial. The Commonwealth did not oppose the motion on grounds that it was not promptly filed; instead, the Commonwealth opposed the motion on substantive grounds, stressing that Ruiz' testimony was offered merely for its impeachment value. The trial court denied relief by order entered on January 17, 2013.

We conclude that Appellant's post-sentence motion under Rule 720(C) was promptly filed on September 27, 2012 following the acquisition of after-discovered evidence, and that his February 5, 2013 notice of appeal was timely filed within 30 days of the entry of the trial court's order denying the post-sentence motion on January 17, 2013. Pa.R.Crim.P. 720(A)(2)(a). The record confirms that Appellant's counsel acted without delay in filing, pursuant to Rule 720(C), a written motion seeking relief based upon after-discovered evidence. Because we conclude that Appellant promptly pursued relief under Rule 720(C), we conclude that he filed a timely post-sentence motion within the meaning of Rule 720(A)(2). As such, Appellant's notice of appeal was due 30 days after entry of the trial court's order that denied the post-sentence motion. Since Appellant

filed the instant appeal in compliance with this deadline, we may exercise jurisdiction in this case and address the merits of Appellant's claims.

■ In his first issue, Appellant claims that the trial court erred when it allowed Detective James Pitts to testify about a recorded statement he took from Bryan Mejias concerning the murder of Keith Bolden. The statement described Appellant's involvement in Bolden's shooting. Appellant alleges that Detective Pitts' testimony constituted inadmissible hearsay.

"Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." *Commonwealth v. Russell,* 938 A.2d 1082, 1091 (Pa.Super.2007). An abuse of discretion is not merely an error of judgment; rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Commonwealth v. Busanet,* 572 Pa. 535, 817 A.2d 1060, 1076 (2002). Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c).

■ In this case, the trial court properly overruled Appellant's hearsay objection and admitted Detective Pitts' testimony regarding the recorded statement he took from Bryan Mejias. Once the trial court overruled Appellant's hearsay objection,[6] Detective Pitts recited Mejias' statement from the witness stand. N.T., 6/26/12, at

---

6. At trial, the Commonwealth explained that the challenged testimony was offered not for its truth but "to show motive and course of

the investigation in this case." N.T., 6/26/12, at 74.

73–75. Immediately thereafter, the detective testified that, based upon his interview with Mejias, Appellant became a suspect in Bolden's murder and members of the Philadelphia homicide squad sought Appellant for questioning in connection with that case. *Id.* at 76. Within a week after Detective Pitts obtained the statement from Mejias, officers with the homicide unit located and brought Appellant in for questioning. *Id.* at 76–77. "It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." *Commonwealth v. Weiss,* —— Pa. ——, 81 A.3d 767, 806 (2013), *quoting Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501, 532 (2005); *see also Commonwealth v. Johnson,* 615 Pa. 354, 42 A.3d 1017, 1035 (2012) ("[A]ny out of court statement offered not for its truth but to explain the witness's course of conduct is not hearsay.") (citation omitted). The certified record reveals that the challenged testimony was offered to explain the detective's course of conduct in questioning Appellant in connection with Bolden's murder, not the truth of the matters contained therein. For this reason, the testimony did not constitute hearsay and there was no error in the admission of the statement.

 Appellant asserts in his second issue that the trial court erred in denying his request for a new trial predicated upon after-discovered evidence. Specifically, Appellant claims that, after he was convicted and sentenced, Ruiz came forward and advised his attorney about a conversation he had with Rosado in January or February 2012. According to Ruiz, Rosado stat-

ed during the conversation that the shooter was a black male and that the district attorney's office was pressuring him to identify Appellant as his assailant.

A trial court should grant a motion for new trial on the ground of after-discovered evidence where producible and admissible evidence discovered after trial (1) could not have been obtained prior to the end of trial with the exercise of reasonable diligence; (2) is not merely corroborative or cumulative evidence; (3) is not merely impeachment evidence; and (4) is of such a nature that its use will likely result in a different verdict on retrial. In reviewing the trial court's determination in this regard, this Court affirms unless the determination constitutes an abuse of discretion.

*Commonwealth v. Lyons,* —— Pa. ——, 79 A.3d 1053, 1068 (2013).

Appellant is not entitled to relief on this claim. The thrust of Appellant's argument is that Ruiz' testimony "would likely cast doubt about the credibility of [Rosado] in the mind of the jury and give the jury an insight as to the mind of [Rosado] and his testimony[.]" Appellant's Brief at 14. Appellant's newly discovered basis for impeaching Rosado's identification testimony does not entitle him to another trial. *Commonwealth v. Bormack,* 827 A.2d 503, 505–507 (Pa.Super.2003) (evidence that "would have allowed the jury to see [an eyewitness] in a different light" was for impeachment alone and did not establish right to a new trial), *appeal denied,* 577 Pa. 693, 845 A.2d 816 (2004).

 In his third issue, Appellant argues that the Commonwealth presented insufficient evidence to establish his identity as the individual who shot Rosado.[7]

---

**7.** Appellant's sufficiency challenge is directed entirely towards the Commonwealth's evidence that identified him as Rosado's assail-

ant (namely, Rosado himself). He does not attack the Commonwealth's proof of any particular element of any of the offenses of which

Appellant's Brief 8–10. Appellant points out that, because Rosado was the only eyewitness to testify, his credibility and capacity to recall relevant facts was critical to the fairness of Appellant's trial. *Id.* Appellant further contends that the Commonwealth has not sustained its burden because (1) Rosado had a criminal history and was on probation; (2) Rosado had a history of drug use that affected his ability to observe and recall facts surrounding the shooting; and, (3) Rosado gave varying accounts about who shot him and the vehicle that was used by his assailants. *Id.* Upon review, we disagree.

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Emler,* 903 A.2d 1273, 1276–77 (Pa.Super.2006).

In this case, Rosado identified Appellant as the individual who shot him on December 27, 2008. N.T., 6/26/12, at 147–149;

*see Commonwealth v. Wilder,* 259 Pa.Super. 479, 393 A.2d 927, 928 (1978) (stating a positive identification by one witness is sufficient for conviction). We also find that most of Appellant's challenges to Rosado's identification relate to the weight of the evidence, not to its sufficiency. *See Commonwealth v. Galloway,* 495 Pa. 535, 434 A.2d 1220, 1222 (1981) (stating that variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence); *Commonwealth v. Halye,* 719 A.2d 763, 764 (Pa.Super.1998) (*en banc*), *appeal denied,* 560 Pa. 699, 743 A.2d 916 (1999), *cert. denied sub nom, Pennsylvania v. Halye,* 529 U.S. 1012, 120 S.Ct. 1287, 146 L.Ed.2d 233 (2000) (mere conflict in the testimony does not render the evidence insufficient because it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence). Therefore, viewing the evidence in the light most favorable to the verdict winner, we find that the Commonwealth presented sufficient evidence to identify Appellant as Rosado's shooter.

■ In his fourth and final claim, Appellant challenges the discretionary aspects of his sentence. Specifically, Appellant claims that the trial court abused its discretion by ordering that Appellant serve his sentence in the present case consecutive to a six and one-half to 13 year sentence Appellant was currently serving for a prior firearms conviction. Appellant's Brief at 10–11. We conclude that Appellant has waived appellate review of this claim.

Pursuant to statute, Appellant does not have an automatic right to appeal the discretionary aspects of his sentence. *See* 42 Pa.C.S.A. § 9781(b). Instead, Appellant must petition this Court for permission to

he was convicted. Hence, we shall forego any recitation of the elements of his crimes.

appeal the discretionary aspects of his sentence. *Id.*

As this Court has explained:

To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, Pa.R.A.P. 902, 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 [Pa. C.S.A.] § 9781(b).

*Commonwealth v. Cook*, 941 A.2d 7, 11 (Pa.Super.2007).

Appellant has not satisfied the procedural prerequisites for appellate review of his objection to the discretionary aspects of his sentence. Our review of the record confirms that Appellant failed to raise his discretionary sentencing claim at his sentencing hearing or by way of post-sentence motion. In addition, Appellant failed to include a separate Pa.R.A.P. 2119(f) statement in his brief, immediately preceding the argument section. Because Appellant neglected to include a separate Rule 2119(f) statement in his brief and because the Commonwealth has objected to this omission, we deem Appellant's challenge to be waived. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super.2003).[8]

Judgment of sentence affirmed.

WECHT, J., files a Concurring Opinion.

CONCURRING OPINION BY WECHT, J.:

I join the learned Majority's opinion in all respects. I write separately to expound further upon Appellant's hearsay claim.

In this case, Appellant was on trial for the non-fatal shooting of Robert Rosado. Appellant apparently shot Rosado because Appellant believed that Rosado had informed law enforcement authorities that Appellant had shot and killed a man named Keith Bolden. At trial, the Commonwealth sought to introduce two out-of-court statements that implicated Appellant in the shooting of Keith Bolden. One statement was made by an individual named Brian Mejias to police detectives (the "Mejias statement"). The other statement was made by a man named Alvin

---

**8.** In his brief at page ten, Appellant sets forth a statement of his sentencing challenge as part of the argument section of his submission to this Court devoted to the discretionary aspects of his sentence. The statement does not comply with the requirements of Rule 2119(f). Nevertheless, even if we were to consider this statement to determine if Appellant has raised a substantial question as to whether the trial court imposed a sentence that was inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms underlying the sentencing process, we would conclude that Appellant is not entitled to relief. Appellant claims only that the trial court imposed an unduly harsh penalty when it ordered the sentences in the present case to run consecutively to a prior sentence imposed for Appellant's firearms conviction. We note that the imposition of consecutive rather than concurrent sentences generally lies within the discretionary power of the sentencing court. *Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa.Super.2008) ("42 Pa.C.S.A. § 9721 affords sentencing court discretion to impose sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed"), *appeal denied*, 600 Pa. 774, 968 A.2d 1280 (2009). Moreover, given Appellant's extensive criminal history and the specific facts of this case, which were considered by the trial court at Appellant's sentencing hearing, we discern no abuse of discretion in the court's sentencing scheme.

Santiago (the "Santiago statement"), which was also made to police detectives.

The Mejias statement was a first-hand account of the Bolden shooting, in which Mejias told the detectives that he personally observed Appellant as one of the men who shot Bolden. However, the Santiago statement was not a first-hand account. Rather, Santiago told the detectives that Mejias told him what Mejias had observed regarding the Bolden murder, which, again, included an identification of Appellant as one of the shooters.

Before trial commenced, Appellant purported to object to both statements. However, when the matter was argued before the trial court, Appellant agreed to the admissibility of the Mejias statement, but argued that the Santiago statement constituted inadmissible hearsay. Notes of Testimony ("N.T."), 6/25/2012, at 18. The trial court agreed, and ruled that the Santiago statement was inadmissible. *Id.* at 24.

During trial, the Commonwealth attempted to introduce the Mejias statement by having a detective read the statement to the jury. Appellant objected to the Mejias statement as being inadmissible hearsay. N.T., 6/26/2012, at 73. Apparently, Appellant's initial concession regarding the admissibility of the statement was predicated upon his belief that Mejias himself would testify that he made the statement, or that he would testify directly about what he had observed, because the stated

basis for Appellant's objection was that the detective's reading of the statement to the jury rendered the statement inadmissible hearsay. *Id.* The Commonwealth responded that it was not offering the statement for its truth, but rather to show Appellant's motive, and to demonstrate the course of police conduct in this case. *Id.* at 74. The trial court overruled Appellant's objection.

Appellant contends that the trial court's ruling in this regard was an abuse of discretion. Notably, throughout the proceedings, the Commonwealth repeatedly asserted that the Mejias statement was not being offered to prove the truth of the statement, but rather to prove Appellant's motive and to demonstrate the course of the police's investigation that ultimately led to Appellant's arrest. The Majority acknowledges both of these stated bases, but addresses only the course of police conduct argument. Upon doing so, the Majority concludes that the statement, in fact, was not offered for the truth of the matter asserted, but to show the steps taken by the police that led to Appellant's arrest. On this point, I agree with the Majority that the statement was admissible for that purpose. However, I believe that the Commonwealth's argument that the statement simultaneously can be offered to show a defendant's motive, but not for the truth of the matter asserted, warrants further discussion.[1]

---

1. I am troubled by the fact that the trial court did not instruct the jury on the limited purpose for which the evidence was being admitted. *See* Pa.R.E. 105 ("If the court admits evidence that is admissible ... for a purpose—but not ... for another purpose—the court, on timely request must restrict the evidence to its proper scope and instruct the jury accordingly. The court may also do so on its own initiative.") After ruling on the objection, the judge, prosecutor, and defense understood the limited purpose for which the evidence was admitted, and for which the jury

could consider the evidence. However, the jury was never apprised of this critical information. Equally troubling is the fact that Appellant's defense counsel did not request a limited purpose instruction, nor did counsel object to the fact that no instruction was given. Consequently, any argument to this Court that the trial court erred in not providing the jury with a limited purpose instruction would be waived. Nonetheless, although I am troubled the lack of the appropriate instruction, had the issue properly been pre-

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered [into] evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay "is not admissible except as provided by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802. Notably, statements that prove, or tend to prove, motive are not one of the well-established exceptions to the general ban on hearsay. *See* Pa.R.E. 803 (declarant's availability immaterial), 803.1 (declarant available and necessary), and 804 (declarant unavailable).

Instantly, the Mejias statement was an out-of-court statement that was offered to prove Appellant's motive for shooting Rosado. The Commonwealth's theory at trial was that Appellant shot Rosado in retaliation for, as Appellant believed, Rosado informing the police that Appellant murdered Bolden. The Mejias statement was integral to demonstrating Appellant's motive in that it proved that Appellant, in fact, killed Bolden. The statement had absolutely no value to the Commonwealth if not introduced for the truth of the matter asserted in the statement. The mere fact that Mejias made the statement has no probative value in regard to motive. Only the contents of the statement, and necessarily the truth of those contents, could establish Appellant's motive. In short, the statement only has value in proving Appellant's motive if it is taken as true. In my view, it is logically inconsistent to argue that the statement was not offered for its truth and to show motive at the same time. Therefore, to the extent that the trial court ruled that the statement was admissible based upon the Commonwealth's motive argument, I would

served, I would find the error to be harmless pursuant to my discussion of harmless error

conclude that the trial court did so erroneously.

As I stated above, the Majority properly concludes that the statement was admissible to demonstrate the course of the police investigation in this case. Nevertheless, even if motive was the only stated basis in support of the admissibility of the statement, Appellant still would not be entitled to relief. "Not all errors at trial ... entitle an appellant to a new trial, and [t]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. West*, 834 A.2d 625, 634 (Pa.Super.2003), (quoting *Commonwealth v. Drummond*, 775 A.2d 849, 853 (Pa.Super.2001), (internal citations and quotations omitted)).

> The Commonwealth bears the burden of establishing the harmlessness of the error. This burden is satisfied when the Commonwealth is able to show that: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Passmore*, 857 A.2d 697, 711 (Pa.Super.2004), (quoting *Commonwealth v. Laich*, 566 Pa. 19, 777 A.2d 1057, 1062–63 (2001)).

Having reviewed the trial transcripts, it is clear to me that the evidence presented at trial proving Appellant's guilt was over-

below.

whelming. In addition to the trial court's summary of the evidence that is quoted by the Majority, *see* Maj. Op. at 1032–33, the trial court offered the following additional recitation of the inculpatory evidence presented at trial:

The victim, Rosado, testified regarding what happened to him on December 27, 2008. Rosado stated that on the day of the incident he saw three (3) individuals, one (1) female and two (2) males, walking down the street as he walked up the steps to his mother's house. As the two (2) males approached him, Rosado recognized Appellant first. The other gentleman with Appellant, Rosado recognized as "Luigi" whose true name is Luis Gonzalez, stood in the street and looked at Rosado as Rosado stood on the porch. Rosado stated that he lifted his shirt and told Luigi that he didn't have anything. He testified [that] Luigi then fired two shots, both missing him, from a silver gun. Rosado stated that he ducked behind the brick wall of the porch to avoid being shot and when the shooting stopped, he ran off the porch and down the steps. After he ran down the steps, Rosado looked down the street towards H Street and saw Appellant. Rosado stated [that] he ran down the street as Appellant fired three to four (3–4) shots from a handgun, one which struck Rosado in the back. Rosado testified that he fell in between parked cars and played dead before getting up and asking a neighbor to call 9–1–1.

Trial Court Opinion, 7/11/2013, at 5–6 (references to notes of testimony omitted).

This evidence, combined with the facts presented in the trial court's initial summary of the trial evidence, overwhelmingly established Appellant's guilt. As such, to the extent that the trial court ruled on Appellant's objections based upon the Commonwealth's motive argument, I conclude that any such error was harmless. Accordingly, I concur in the result reached by the learned Majority.