J-S19003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MATTHEW JOSEPH COLE | : | |
| | : | |
| Appellant | : | No. 839 MDA 2023 |

Appeal from the Judgment of Sentence Entered May 9, 2023
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000319-2021

BEFORE: DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED: JUNE 7, 2024**

Appellant, Matthew Joseph Cole, appeals from the judgment of sentence of 48 to 96 months of incarceration following his conviction by a jury of Flight to Avoid Apprehension ("Flight"), Escape, Attempted Escape, Resisting Arrest, and Disorderly Conduct.[1] Appellant challenges the sufficiency of the evidence in support of his convictions of Escape and Attempted Escape. After careful review, we affirm.

The relevant facts and procedural history are as follows. On July 26, 2021, Appellant, who had been out of custody on bail, appeared before the Clinton County Court of Common Pleas for sentencing in two unrelated

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 5126(a), 5121(a), 901(a), 5104, 5503(a)(4), respectively.

criminal cases.[2]  On that day, the trial court sentenced Appellant to an aggregate term of 15 to 48 months of state incarceration "in a State Correctional Institution."  Commonwealth's Brief, Exh. 1 at 9.

Immediately following the imposition of sentence, Appellant's counsel reminded the court that when the court notified Appellant before it had started the sentencing hearing that it intended to "send [Appellant] to a State Correctional Institution" Appellant had requested to withdraw his guilty plea.[3] *Id.* at 12.  The court denied that request.  Appellant then began pleading with the court not to sentence him to state prison.  The trial court rejected Appellant's pleas and ordered him to "remain in the custody of the sheriff." N.T. Trial, 1/6/23, at 41; Commonwealth's Brief, Exh. 1 at 13.  Appellant continued to plead with the court to "at least let me take it to trial and remain out until then"; the court denied the request and directed Appellant to "[g]o with the [s]heriff, please."  N.T. Trial, 1/6/23, at 43; Commonwealth's Brief, Exh. 1 at 14.

_____

[2] At Docket Number 342-2020, Appellant pleaded guilty to one count each of Receiving Stolen Property and Driving Under Suspension.  At Docket Number 413-2020, Appellant pleaded guilty to one count each of Retail Theft and Driving Under Suspension.

[3] The trial court's indication that it intended to sentence Appellant to state incarceration and Appellant's subsequent request to withdraw his guilty plea as described by counsel does not appear in the notes of testimony.

Clinton County Sheriff Deputies Ryan Bratton and Scott Sorgen were present in the courtroom that day.[4] Once the trial court sentenced Appellant, the court signed and handed a commitment slip to Deputy Bratton, who, in turn handed it to Deputy Sorgen. Deputy Sorgen's responsibility was, among other things, to then bring Appellant from the second-floor courtroom, via elevator, to a holding cell on a lower floor of the courthouse to await transport to prison.

After he received the commitment slip, Deputy Sorgen told Appellant to walk to the elevator. As the two men approached the courtroom door, Appellant "took off running down the second - - from the second floor down a set of steps to the first floor." N.T. Trial, 1/6/23, at 46. Appellant ran toward the courthouse exit, in a "dead sprint" chased by Deputy Sorgen, who instructed Appellant to "stop" several times. *Id.* at 46, 48, 53. Deputy Sorgen reached out to grab Appellant, but only managed to grab Appellant's shirt, which then came off. Deputy Sorgen then "did a leg sweep" on Appellant and Appellant fell onto a glass showcase. *Id.* at 46. Appellant and Deputy Sorgen began to wrestle on the floor, prompting other deputies to become involved. Then "[t]asers were deployed. . . . The fourth and final taser deployment is the one we were able to get him handcuffed and back into custody at that point." *Id.* at 47. It took three or four deputies to ultimately subdue Appellant.

---

[4] Deputy Sorgen was dressed in a black sheriff's uniform bearing an insignia on the shoulder, and had a badge, full duty belt, and radio.

Following this incident, the Commonwealth charged Appellant with numerous offenses. On January 6, 2023, Appellant appeared for a jury trial[5] at which Deputy Sorgen testified consistent with the above facts.[6] On cross-examination, Deputy Sorgen testified that, unless a defendant was "being rowdy," it was not common practice for a deputy to place a defendant in restraints when escorting them to a holding cell after sentencing. *Id.* at 74.

In his defense, Appellant offered the testimony David Lindsey, Esquire, his counsel in the unrelated criminal cases, Brittany Keller, the mother of two of his children, and Deputy Sheriff John Lavrich. Appellant also testified. In particular, Appellant testified that he did not believe that he was in official detention when he attempted to flee the courthouse. He held this belief because he was not put in any restraints or ordered to "get up against the wall." *Id.* at 135. He also explained that he did not recall Deputy Sorgen telling him to go to the elevator but also that "I'm not saying that he didn't." *Id.* Appellant testified that no one ever put a hand on his arm to lead him out of the courtroom or said, "come with me or you're being detained or this way to the elevator." *Id.* He further testified that he never heard the trial court

---

[5] Appellant represented himself at trial with the assistance of W. Jeffrey Yates, Esquire, standby counsel. On March 2, 2023, the trial court vacated the appointment of Attorney Yates as counsel.

[6] The Commonwealth moved into evidence the notes of testimony from Appellant's July 26, 2021 sentencing hearing, and Deputy Sorgen read to the jury the relevant portions of the transcript. The Commonwealth also played for the jury a video recording of the incident as captured by video surveillance cameras placed throughout the courthouse.

sentence him to a state prison, although he did know he would be sentenced to custody that day.

Following trial, the jury convicted Appellant of the above crimes.[7]  On May 9, 2023, the trial court sentenced Appellant to an aggregate term of 48 to 96 months of incarceration.  Appellant did not file a post-sentence motion.

This timely appeal followed.  Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

> [] Whether the evidence presented at [t]rial was insufficient to support Appellant's conviction [of] Escape—Removed Self from Detention, 18 Pa.C.S. § 5121(a), since the Commonwealth failed to prove, beyond a reasonable doubt, that Appellant unlawfully removed himself from official detention or that Appellant attempted to unlawfully remove himself from official detention?

Appellant's Brief at 6.

**A.**

Appellant asserts that the Commonwealth presented insufficient evidence to support his Escape conviction.

Our standard of review for challenges to sufficiency of the evidence is well-settled.  "A claim challenging the sufficiency of the evidence is a question of law."  **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000).  "Our standard of review is *de novo*, and our scope of review is plenary."  **Commonwealth v. Mikitiuk**, 213 A.3d 290, 300 (Pa. Super. 2019).  When

---

[7] On March 3, 2023, the trial court entered an order appointing current counsel, Mark A. Decker, Esquire, to represent Appellant.

reviewing sufficiency challenges, we evaluate the record in the light most favorable to the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014).

This Court will not disturb a verdict if the evidence produced at trial is "sufficient to establish all elements of the offense beyond a reasonable doubt." *Id.* (citation omitted). "[A] conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017). "[T]he appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

A person is guilty of Escape if he "unlawfully removes himself from official detention[.]" 18 Pa.C.S. § 5121(a). Section 5121(e) further provides that "official detention means arrest, detention in any facility for custody of persons under charge or conviction of crime[,] . . . or **any other detention for law enforcement purposes**[.]" *Id.* at § 5121(e) (emphasis added, internal quotation marks omitted). Moreover, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Id.* at § 901(a).

**B.**

Appellant argues that the Commonwealth failed to prove that he had been placed under official detention before he attempted to run out of the

courthouse after being sentenced. Appellant's Brief at 12-17. Appellant asserts that because the Commonwealth did not produce any evidence that he was placed in handcuffs or otherwise restrained physically or by show of authority, or given any instructions as to what to do other than proceed to the elevator, it only proved that he committed the offense of Flight.[8] *Id.* at 13 (citing *Commonwealth v. Colon*, 719 A.2d 1090, 1100 n.2 (Pa. Super. 1998) ("The essence of 'escape' is to remove oneself from official detention, while 'flight to avoid apprehension' is to avoid submitting to official detention or criminal prosecution.")), 16. He acknowledges that, after the trial court imposed sentence, it instructed that Appellant "remain the custody of the [s]heriff." *Id.* at 16. He argues, however, that, because he had been out on bail, "this statement would be confusing to an individual in Appellant's shoes, as he was not in the custody of the [s]heriff at any time up to this point, and therefore could not 'remain' in their custody." *Id.*

Upon review, we conclude that the Commonwealth presented sufficient evidence from which the jury could reasonably find that the trial court had lawfully detained Appellant and that Appellant removed himself from official detention. With respect to Appellant's placement in official detention, the evidence presented at trial demonstrated that Appellant was aware that he was present in court for sentencing. The court's on-the-record sentencing

---

[8] A person commits the offense of Flight if he "willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial[,] or punishment[.]" 18 Pa.C.S. § 5126(a).

order was clear that it was sentencing Appellant to "imprisonment in a State Correctional Institution." Furthermore, upon hearing his custodial sentence, Appellant pleaded with the court to permit him to withdraw his guilty plea to "at least let me take it to trial and remain out until then." In addition, the court unambiguously directed Appellant to "remain in the custody of the [s]heriff" and then to "go with the [s]heriff." Subsequently, Deputy Sorgen, who was dressed in a black sheriff's uniform bearing an insignia on the shoulder, and had a badge, full duty belt, and radio, told Appellant to walk with him to the elevator.

With respect to Appellant's removal from official detention, the Commonwealth's evidence demonstrated that Appellant absconded from the courtroom, despite Deputy Sorgen's repeated instructions to stop, and ran down the stairs from the second floor of the courthouse to the first floor. When Deputy Sorgen reached out to restrain Appellant, Appellant continued to run from him resulting in Appellant's shirt coming off in Deputy Sorgen's hand. Numerous other law enforcement personnel became involved to subdue and restrain Appellant who continued to struggle to flee, until, through their use of tasers, deputies were able to bring Appellant under control.

Thus, viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we find that sufficient facts of record support the jury's conclusion that Appellant had been placed in official detention and removed himself or attempted to remove himself from that official detention. Accordingly, the Commonwealth presented sufficient

evidence to sustain Appellant's convictions of Escape and Attempted Escape and Appellant's claim fails.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/07/2024